**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**ERDINE E.,** [1]

**Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**Case No. 2:25 CV 13796**
**Magistrate Judge Cheryl L. Pollak**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Erdine E. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.,* and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq,* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the Commissioner of Social Security, is substituted as Defendant in his official capacity.

## I. PROCEDURAL HISTORY

On April 14, 2023, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, and an application for supplemental security income, alleging that she had been disabled since an alleged onset date of February 13, 2023. R. 75-78, 172-80. Plaintiff's applications were denied initially and upon reconsideration. R. 93-97, 106-109, 110-113. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 114. ALJ Sharon Allard held a telephonic hearing on May 21, 2024, at which Plaintiff, who was represented by counsel David Kuznicki, Esq., testified, as did an impartial vocational expert, Warren Maxim. R. 32-60.

In a decision dated May 31, 2024, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 13, 2023, the alleged onset date, through the date of the decision. R. 17-27. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 23, 2025. R. 1-6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On July 21, 2026, Plaintiff consented to disposition of the matter by a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (ECF No. 13).[3] On July 22, 2026, the case was reassigned to the undersigned. (ECF No. 14). The matter is now ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp. 3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation

omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B. Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec*., 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec*., 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§

404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e)(f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 58 years old at the alleged date of onset. R. 22; (*Plaintiff's Brief*, ECF No. 6 ("*Pl.'s Br.*") at 2). The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2027. R. 20. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since February 13, 2023, her alleged onset date. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar spinal stenosis, degenerative disc disease, and osteoarthritis. *Id*. The ALJ also found that the following medically determinable impairments were not severe: obesity, hypertension, and

asthma. *Id.* The ALJ also noted references in the record to bilateral carpal tunnel syndrome, but explained that it was "a non-medically determinable impairment." R. 21.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 21-22.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various exertional and non-exertional limitations. R. 22-25. Over Plaintiff's objection to the vocational expert's classification of her past relevant work, the ALJ also found that the Plaintiff was able to perform her past relevant work as a "facility manager," citing the hearing testimony of the vocational expert. R. 26.

Plaintiff disagrees with the ALJ's findings at steps two and four, arguing that in concluding that Plaintiff was able to return to her past relevant work, the ALJ: 1) failed to consider the assessment of the consultative examiner, Dr. Rashel Potashnik, that Plaintiff might be limited in her ability to perform repetitive fine manipulation;[4] and 2) relied upon the vocational expert's misidentification of the DOT code for facilities manager. (*Pl.'s Br.* at 12-15; 15-17). Plaintiff asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Pl.'s Br.* at 18; *Plaintiff's Reply Brief*, ECF No. 21 ("*Pl.'s Reply*"). The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 11 ("*D.'s Br.*").

[4] On June 22, 2023, Dr. Potashnik stated that Plaintiff "[m]ay be limited in repetitive fine manipulations." R. 514.

## IV. SUMMARY OF THE ALJ'S FINDINGS AND RELEVANT MEDICAL EVIDENCE

In determining that Plaintiff did not have an impairment or combination of impairments that would meet or medically equal the severity of one of the listed impairments, the ALJ first determined that the record did not meet the criteria of Listing 1.15, requiring a documented disorder of the skeletal spine resulting in compromise of a nerve root lasting or expected to last for a continuous period of at least 12 months and documented by at least one of the criteria of l.15D. R. 21. The ALJ also determined that the record did not establish the criteria of Listing 1.16, which requires lumbar spinal stenosis resulting in compromise of the cauda equina, was not documented by the record, nor was there a documented abnormality of any major joint(s) in any extremity as required by Listing 1.18. R. 21-22.

As noted *supra*, the ALJ addressed Plaintiff's claim of carpal tunnel syndrome at step two of the analysis, reviewing the consultative examination report of Dr. Rashel Potashnik, in which the Plaintiff had reported pain in the right elbow while typing and driving, and claimed to have had cortisone injections six to seven years earlier, with improvement. R. 21 (citing Ex. 7F). The record indicated that Plaintiff had declined surgery and the doctor did not want her to get any more injections. *Id.* According to the ALJ's review of the consultative examination report, Dr. Potashnik found Plaintiff's grip strength to be 4+/5 on the right and 5/5 on the left. *Id.* The ALJ further noted that treatment records from June 13, 2023, showed that Plaintiff had "good range of motion of extremities and do not mention any hand problems or limited grip strength." *Id.* Citing x-rays of Plaintiff's wrists, the ALJ noted that both "were within normal limits." *Id.* (citing Ex. 7F at 4-5).

## V. DISCUSSION

Plaintiff argues that the ALJ erred at steps two and four when the ALJ ignored objective

medical evidence. *Pl.'s Br.* at 12-15; *Pl.'s Reply* at 1-3. Plaintiff contends that the ALJ erred at step two when she failed to address an earlier EMG study, a diagnosis of carpal tunnel, and Dr. Potashnik's statement that Plaintiff may be limited in repetitive fine manipulations. *Pl.'s Reply* at 1-3 (citations omitted). Plaintiff also argues that, at step four, when crafting the RFC assessment, the ALJ failed to consider Dr. Potashnik's assessment that Plaintiff may be limited for repetitive fine manipulation. *Pl.'s Br.* at 14-15 (citations omitted). According to Plaintiff, the ALJ's errors require remand for additional administrative proceedings. *Pl.'s Br.* at 12-15; *Pl.'s Reply* at 1-3.

**A. Step Two Challenge**

In turning first to Plaintiff's step two challenge, the Court notes that, at this step, an ALJ determines whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec*., 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). Even if the ALJ errs in failing to find an impairment severe, but finds other impairments severe at step two, that error is harmless if the ALJ goes on to consider that impairment when crafting the RFC at step four of the sequential analysis. *Edinger v. Saul*, 432 F. Supp. 3d 516, 531 (E.D. Pa. 2020).

Here, as noted *supra*, the ALJ found at step two that Plaintiff's alleged carpal tunnel syndrome was "a non-medically determinable impairment." R. 21. The ALJ noted that Dr. Potashnik's examination revealed 4+/5 grip strength on the right and 5/5 grip strength on the left and that treatment records from June 13, 2023, did not reflect hand problems or limited grip strength. *Id*. (citations omitted). The ALJ also noted that the x-rays of Plaintiff's bilateral wrists were within normal limits. *Id*. (citations omitted). The ALJ explained that Plaintiff's carpal

tunnel syndrome had not been established by "objective medical evidence from an acceptable medical source," and thus did not meet the standard for establishing a medically determinable impairment. R. 21 (citing Exs. 6F, 7F at 2, 8F at 1; 10F at 1).

Plaintiff, however, argues that the ALJ erred in concluding at step two that there was no "objective evidence" from an acceptable medical source that she had a "medically determinable and 'severe' impairment based on carpal tunnel syndrome. *Pl.'s Reply* at 1-3. Plaintiff specifically points to evidence not discussed by the ALJ, *i.e.*, an earlier EMG study establishing carpal tunnel syndrome;[5] a diagnosis of carpal tunnel syndrome by Richard Lebovicz, M.D., an orthopedic surgeon;[6] and Dr. Potashnik's statement that Plaintiff may be limited in repetitive fine manipulations and diagnosis of carpal tunnel syndrome. *Pl.'s Reply* at 1 (citing R. 385-89, 513-14, 520). Plaintiff also highlights Dr. Potashnik's examination findings of decreased grip strength on the right and positive Tinel's signs in bilateral wrists as well as that physician's. *Id.* (citing R. 512). While the ALJ did review this evidence from Dr. Potashnik R. 21 (citing Ex. 7F), the ALJ does not mention that at the time of the June 22, 2023 evaluation, "The claimant

[5] The record reflects that a nerve conduction study was conducted by Edison Metuchen Orthopedics on April 9, 2013, reporting "evidence of moderate to severe bilateral median neuropathy at the wrists. This is consistent with the clinical diagnosis of Carpal Tunnel Syndrome." R. 385-87. Although the ALJ noted a reference to Exhibit 3F in her decision, she did not explicitly note that this study had been done, nor did she reference the impression stated in the record.

[6] Similarly, while the ALJ referenced Exs. 8F and 10F, the November 3, and 27, 2023 clinical summaries of Plaintiff's office visits with Dr. Richard Lebovicz, an orthopedist, the ALJ did not discuss either in her decision. R. 520-21, 528. Summarizing the earlier visit on November 3, 2023, Dr. Lebovicz noted his "Impression: Carpal tunnel syndrome, bilateral upper limbs," and "Other spondylosis, cervical region." R. 520. At that visit, the doctor ordered a bilateral EMG and Nerve Conduction study. R. 521. The doctor also noted that Plaintiff was advised: "When surgery has been recommended please make sure you let us know exactly when you like to proceed. If we have no specific date request, your procedure will be scheduled at the next available time."

complained of constant low back pain, L>R, left-sided neck pain, *bilateral hand numbness, pain in the right elbow when typing and driving.*" *Compare* R. 512 (emphasis added) *with* R 21. In that same evaluation, Plaintiff also told Dr. Potashnik that "[s]he was diagnosed with bilateral CTS [Carpal Tunnel Syndrome], had cortisone injections 6-7 years ago with improvement. She declined surgery, her doctor did not want her to get more injections. *She wears braces at night."* R. 512. Dr. Potashnik's "Impression" was "Claimant is a 58-year-old female with . . . bilateral CTS." R. 513.

Plaintiff argues that the ALJ erred in finding that, despite this "clear evidence of carpal tunnel syndrome[,]" the ALJ did not find that carpal tunnel syndrome was a medically determinable impairment because there was no objective evidence. *Id*. at 1-2. Plaintiff also contends that x-rays are not a diagnostic test for carpal tunnel syndrome. *Id.* at 2 n. 1. Plaintiff therefore argues that this evidence was not simply "rank speculation," it was plain error for the ALJ to find at step two that carpal tunnel syndrome was not a medically determinable impairment. *Id*. at 2-3.

This Court agrees that the lack of clarity in the ALJ's reasoning in concluding that there was no "objective medical evidence" supporting an impairment based on carpal tunnel syndrome was error. As set forth above, there appears to have been evidence beyond just Plaintiff's own complaints of wrist pain, and yet the ALJ did not explain why she discounted the references to carpal tunnel syndrome in the records of Dr. Leibovicz, Woodbridge Internal Medical Associates, and the results of the EMG Nerve Conduction Study to conclude that there was no "objective evidence" from an acceptable medical source supporting a finding that Plaintiff's carpal tunnel syndrome was a severe medically determinable impairment. While it is true that the ALJ need not use "particular language or adhere to a particular format," the ALJ must still

provide a "discussion of the evidence" and an "explanation of reasoning" "sufficient to enable meaningful judicial review." *Diaz*, 577 F.3d at 504 (internal quotation marks and citations omitted); *see also Sanford v. Comm'r of Soc. Sec*., No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

However, even assuming that the ALJ erred at step two when concluding that carpal tunnel syndrome was not a severe medically determinable severe impairment, *see Newell*, 347 F.3d at 546 (requiring a *de minimis* screening), the ALJ found other impairments—lumbar spinal stenosis; degenerative disc disease; and osteoarthritis—severe at step two and did not deny benefits at that step. R. 20. Accordingly, any error at step two is harmless unless the ALJ failed to properly consider carpal tunnel at step four when crafting the RFC. *See Edinger*, 432 F. Supp. 3d at 531.

**B. Step Four Challenge**

Turning to the ALJ's analysis at step four, as previously noted, Plaintiff argues that the ALJ erred at step four when crafting the RFC because the ALJ ignored critical evidence related to Plaintiff's carpal tunnel syndrome. *Pl.'s Br.* at 14–15. As background, the ALJ found that Plaintiff had the RFC to perform "light work" with the following exceptions:

> The claimant can lift/carry up to 20 pounds occasionally, and 10 pounds frequently. The claimant can stand/walk for 4 hours and sit for 6 hours in an 8-hour workday. The claimant can occasionally climb ramps and stairs, balance on wet moving or uneven surfaces, kneel, stoop, and crouch; cannot crawl or climb ladders, ropes, or scaffolds, or work around hazards, including moving mechanical parts or at unprotected heights. The claimant can frequently handle and finger.

R. 22.

"Findings of fact by the [Commissioner] must be accepted as conclusive by a reviewing

court if supported by substantial evidence." *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir. 1981). Substantial evidence has been defined as "such relevant evidence as a reasoning mind might accept as adequate to support a conclusion." *Id.* (citing *Lewis v. Califano*, 616 F.2 73, 76 (3d Cir. 1980); 42 U.S.C. § 405(g)). The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests," sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704-05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id.* at 705-06. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) (holding that "Although we do not expect the ALJ to make reference to every relevant treatment note in a case. . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett*, 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("the ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." (citations omitted). A claimant's RFC is the most the claimant can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

The ALJ has a duty to consider all the evidence when determining a claimant's RFC, *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999), but need only include "credibly established"

limitations in the RFC. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that is] supported by medical evidence, but is opposed by other evidence in the record."). However, '[t]his discretion is not unfettered." *Id.* While the ALJ has the discretion to include a limitation that is not supported by any medical evidence, "if the ALJ finds the impairment otherwise credible," "the ALJ cannot reject evidence of a limitation for an unsupported reason." *Id.*

"In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work." *Burnett*, 220 F.3d at 120. In conducting this analysis, the ALJ must: (1) "make specific findings of fact as to the claimant's residual functional capacity"; (2) "make findings of the physical and mental demands of the claimant's past relevant work"; and (3) compare the claimant's residual functional capacity to his past relevant work to determine whether claimant is capable of performing the past relevant work. *See id.* (citations omitted). "Similar to the medical reports, the ALJ must also consider and weigh all of the nonmedical evidence before him." *Id.* at 122 (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983); *Cotter*, 642 F.2d at 707).

In her analysis, the ALJ noted that Plaintiff had a 12th grade education and had filed for disability alleging: "facet joint and ligamentum flavum hypertrophy; broad-based disc bulges with severe arthritis; bilateral foraminal stenosis/spondylosis; degenerative disc disease with endplate osteophytes; disc and facet joint disease spinal stenosis, multi-level; central canal stenosis, disc protrusions/herniations; bi-foraminal stenosis; carpal tunnel syndrome; tennis elbow/bursitis/tendonitis; and significant spinal canal encroachment/cord compression." R. 22-23 (citing Ex. 3E). Citing Plaintiff's testimony at the hearing, the ALJ noted that she had stopped

working in facility management due to problems with her hands, back and knees. R. 23. Plaintiff testified that she would oversee and perform scheduling for outside contractors and that "[t]here was some walking involved," and she "used to sit half the day." *Id.* She claimed that "she [was] always in pain," had difficulty sleeping, walking, "preparing food, taking care of her hair, brushing her teeth, and driving," as well as "turning her neck." *Id.* The ALJ further noted that Plaintiff testified that "[s]he also has carpal tunnel syndrome." *Id.*[7]

In challenging the ALJ's RFC determination, Plaintiff notes that while Dr. Potashnik did not provide an assessment of Plaintiff's ability to sit, stand, walk, lift or carry, the doctor did state that Plaintiff "[m]ay be limited in repetitive fine manipulations." *Pl.'s Br.* at 14 (citing R. 514). Plaintiff contends that Dr. Potashnik's assessment was consistent with evidence in the record, including an EMG study undertaken in 2013, identifying carpal tunnel syndrome, R. 385-89, and the November 2, 2023, diagnosis of orthopedist Dr. Richard Levovicz of carpal tunnel syndrome, R. 514. *Pl.'s Br.* at 14. Plaintiff also points to Dr. Potashnik's finding of "tenderness in the left wrist to palpation," and the "Tinel's test [that] was equivocal at the right elbow but positive at both wrists." *Id.* at 14 (citing R. 512). Plaintiff contends that despite this record evidence supporting Dr. Potashnik's assessed limitation for fine manipulation, the ALJ failed to consider this limitation when crafting the RFC determination. *Id*. at 15. Plaintiff contends that the ALJ's failure in this regard requires remand. *Id*.

It is true that an ALJ is not required to discuss every tidbit of record evidence. *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). However, as previously explained, the ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests"

---

[7] As Plaintiff notes, she also testified at the hearing that her right hand would fall asleep and that she was scheduled to have carpal tunnel release surgery. *Pl.'s Reply* at 2 (citing R. 47-48).

sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05.[8] Here, as detailed above, the ALJ selectively cited to the record when considering Dr. Potashnik's notes and findings, omitting, *inter alia*, any reference to that physician's assessment that Plaintiff may be limited in her ability to perform fine manipulations. R. 21, 24, 25, 512–14. It is not immediately apparent to what extent this selective citation of the record and omission of critical evidence affected the ALJ's RFC restriction that Plaintiff was capable of frequently handling and fingering or how the ALJ arrived at such limitation. *Id*. Where the ALJ selectively cites to treatment notes that supported her assessment but ignores contrary portions without explanation, the Court cannot follow the ALJ's reasoning or otherwise conclude that substantial evidence supports the ALJ's consideration of Plaintiff's carpal tunnel syndrome and the RFC determination restricting Plaintiff to, *inter alia*, frequent handling and fingering. *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with [her] responsibilities under the regulations and case law.").

Moreover, the Court cannot conclude that the ALJ's error in ignoring Dr. Potashnik's assessment that Plaintiff may be limited in her ability to perform "repetitive fine manipulations" is harmless. Appendix C of the Selected Characteristics of Occupations Defined in the Revised

---

[8] The Commissioner argues that Dr. Potashnik's statement that Plaintiff "[m]ay be limited in repetitive fine manipulations" is not opinion evidence, which required the ALJ's analysis of its persuasiveness pursuant to 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b), *D.'s Br.* at 5–7. Nevertheless, as the Commissioner concedes, that statement was still record evidence. *Id*. at 7. The Commissioner insists that Dr. Potashnik's statement was vague and inconclusive and adequately accounted for by the RFC limitation for frequent handling and fingering. *Id*. at 7–8. However, for the reasons explained later in this Opinion and Order, this Court disagrees that substantial evidence supports that RFC limitation.

Dictionary of Occupational Titles ("SCODICOT")[9] describes the physical activities that an occupation requires of a worker, including handling and fingering. SCODICOT App. C; *see also Joyce v. Colvin*, No. CIV.A. 14-2305, 2015 WL 94135, at *3 (E.D. Pa. Jan. 7, 2015) (equating fingering with "fine manipulation"). Appendix C defines the frequency of the presence of physical demands. SCODICOT App. C.[10] Appendix C does not list the term "repetitive" in one of the frequency categories. *See id*.

Although there is some authority that may suggest that "repetitive" may equate to "frequent," the meaning of "repetitive" depends on the facts of the particular case. *See Boone v. Barnhart*, 353 F.3d 203, 205–07 (3d Cir. 2004); *Williams v. Barnhart*, 424 F. Supp.2d 796, 802 (E.D. Pa. 2006). For example, in *Boone* the ALJ found that the claimant had the RFC to perform light work, but could not perform, *inter alia*, "repetitive hand activity." *Boone*, 353 F.3d at 205. While the ALJ, relying on vocational expert testimony, found that the claimant could work as, among other things, a sales counter clerk, the Third Circuit disagreed. *Id*. at 205, 207. The Third Circuit found that the job "involves frequent reaching, handling, and fingering, which [the claimant's] limitation on repetitive hand activities *may* preclude." *Id*. at *7 (emphasis added).

Similarly, in *Williams*, the ALJ found that the claimant had the RFC to perform light work subject to several limitations, including that she "should avoid constant and repetitive grasping and fine manipulation[.]" *Williams*, 424 F. Supp.2d at 798. In considering the jobs that the ALJ found that the claimant could perform with her RFC, the *Williams* court observed that

---

[9] The SCODICOT is the companion publication to the Dictionary of Occupational Titles, SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000).

[10] Appendix C defines the frequency categories as follows: "Not present (N)" ("Activity or condition does not exist"); "Occasionally (O)" ("Activity or condition exists up to 1/3 of the time"); "Frequently (F)" ("Activity or condition exists from 1/3 to 2/3 of the time"); "Constantly (C)" ("Activity or condition exists 2/3 or more of the time"). SCODICOT App. C.

"[a] conclusion that the ALJ meant repetitive to be synonymous with continuous or frequent rests on speculation and conjecture" and that, "based on the record, frequent is not the only possible meaning of repetitive, nor can any one [sic] be certain that it is what the ALJ and [vocational expert] meant." *Id*. at 801–02.

At bottom, "[t]he inherent ambiguity in the term 'repetitive' requires an express definition to be certain of its connotation." *Alexander v. Astrue*, No. CIV.A. 07-4913, 2008 WL 4091684, at *6 (E.D. Pa. Sept. 2, 2008) (collecting cases and remanding where neither the ALJ nor the vocational expert clarified the meaning of "repetitive"). In this case, without engaging in the work of the ALJ, this Court cannot determine the meaning of Dr. Potashnik's assessment that Plaintiff may be limited in "repetitive fine manipulations" and, relatedly, whether substantial evidence supports the ALJ's RFC limitation for frequent handling and fingering. *See Messina v. Comm'r of Soc. Sec*., 844 F. App'x 586, 589–90 (3d Cir. 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations.") (citations omitted); *Chandler v. Comm'r of Soc. Sec*., 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."). Therefore, by not expressly considering Dr. Potashnik's assessment that Plaintiff may be limited in "repetitive fine manipulations" and explaining the basis for the restriction in the RFC for frequent handling and fingering, the ALJ failed to build a "logical bridge" between the evidence and her decision. *See Bienkowski v. Bisignano*, No. 4:24-CV-1714, 2025 WL 1668328, at *7 (M.D. Pa. June 12, 2025) ("[A]s part of the ALJ's duty of articulation, the ALJ must establish a logical bridge between the evidence and the ALJ's legal conclusions and factual findings."); *Glenda M. v. Comm'r Soc. Sec*., Civ. No. 22-03137, 2023 WL 6387515, at *6 (D.N.J. Sep. 29, 2023) ("An ALJ need not specifically address every piece of evidence, but must provide a

'logical bridge' between the evidence and [his] conclusions.") (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

In sum, without further explanation, the Court simply cannot determine from this record if substantial evidence supports the ALJ's RFC finding of "frequently handle and finger," in light of Dr. Potashnik's suggested functional limitation. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (stating that the ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review") (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)).

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date: September 18, 2026

*s/Cheryl L. Pollak*
CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE